UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEMETRIUS CRAFTON, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:24-CV-155-JD-JEM |
| WENDY DAVIS, et al., | |
| Defendants. | |

OPINION AND ORDER

Demetrius Crafton, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Crafton's complaint describes a series of events that occurred after he pleaded guilty to two DUI charges in September 2022, before Allen County Judge Wendy Davis. The state court record shows that the plea agreements were taken under advisement and Crafton entered into an agreement to participate in a deferral program. *See State v. Crafton*, No. 02C01-2207-F6-000802 (Allen Super. Ct. filed July 14, 2022); *State v. Crafton*, No. 02C01-2012-F6-001534 (Allen Super. Ct. filed Dec. 14, 2020), available at

mycase.in.gov.[1] Indiana law allows a court to "defer proceedings against an individual and place the individual in a problem solving court program" if certain conditions are met.[2] IND. CODE § 33-23-16-14(a). The criminal dockets show that Crafton was placed at the Allen County Community Corrections Residential Services ("ACCCRS") as a condition of the deferral.

As part of the deferral process, Crafton had weekly meetings with Judge Davis. In his complaint, he identifies two instances during the deferral period in which Judge Davis sent him to the Allen County Jail—in November 2022 and February 2023. He alleges that he did not receive written notice of the violations that led to those detentions and that he was not represented by an attorney during those hearings.

After the second detention ended on March 16, 2023, Chandler's supervision was transferred from the ACCCRS to Adult Probation. But ultimately, the deferral program was unsuccessful because the criminal dockets show that on December 7, 2023, a petition to revoke and to resume prosecution was filed. A hearing was held on March 8, 2024. Crafton was represented by counsel, and the court found by a preponderance of

---

[1] The court is permitted to take judicial notice of public records at the pleading stage. *See* Fed. R. Evid. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018).

[2] "A pretrial diversion program allows the prosecuting attorney to withhold formal prosecution under certain circumstances to afford the defendant an opportunity to successfully complete an alternative course of action. *See* Ind. Code § 33-39-1-8; *Schenke v. State*, 136 N.E.3d 255, 258 (Ind. Ct. App. 2019). Section 14 describes a situation where the State and the defendant reach a plea agreement, the defendant pleads guilty, and the court, without entering a judgment of conviction, defers the criminal proceedings while the defendant participates in a problem solving court program. Ind. Code § 33-23-16-14(a). If the person successfully completes the problem solving court program, the charges are dismissed, Ind. Code § 33-23-16-14(c), but if the person's participation in the program is terminated, a judgment of conviction is entered, and the person is sentenced, Ind. Code § 33-23-16-14(b)." *Holsapple v. State*, 148 N.E.3d 1035, 1038–39 (Ind. Ct. App. 2020).

the evidence that Crafton violated the terms of the Restoration Court and resumed the prosecution. At a sentencing hearing on April 19, 2024, the court sentenced Crafton to the Indiana Department of Correction and entered judgment.

Crafton takes issue with his initial guilty plea in September 2022. He alleges his public defender at the time told him that his sentences would run together, and he confirmed that with the judge at his change-of-plea hearing. But he says he later learned he was misled, and the sentences would run consecutively. He asserts that his guilty plea was not valid and should not have been accepted. He contends that after the deferral was ended and the prosecution resumed, he asked his public defender to vacate the plea agreement, but his public defender told him that once he signed it, he could not take it back, regardless of circumstances.

Crafton is barred from challenging the validity of his guilty plea in this case by the doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a litigant may not assert any claim in a civil lawsuit that necessarily implies the invalidity of his outstanding criminal conviction. Under *Heck*, any claim based on challenging his guilty plea cannot be brought unless and until his conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. Here, Crafton's criminal conviction is still intact, and therefore he cannot bring any claim here suggesting there was a problem with his guilty plea.

*Heck* may also act to bar Crafton's claims concerning his two detentions during the deferral period, even though at the time he was not convicted or sentenced. *See*

*Antonelli v. Foster*, 104 F.3d 899, 901 (7th Cir. 1997) (extending *Heck* to claims asserting the "invalidity of confinement pursuant to some legal process, whether a warrant, indictment, information, summons, parole revocation, conviction or other judgment, or disciplinary punishment for the violation of a prison's rules"). Here, Crafton was confined in the Allen County Jail pursuant to a legal process after the State court determined that he had violated a term of his deferral. However, the Seventh Circuit did not discuss *Heck* when it entertained similar claims from litigants who were also participating in a drug treatment program as part of a deferred prosecution and who alleged they were placed in jail without due process. *See Hoffman v. Knoebel*, 894 F.3d 836, 843 (7th Cir. 2018). Therefore, the court will exercise its discretion and "bypass the impediment of the *Heck* doctrine and address the merits of the case." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011).

In *Hoffman*, the plaintiffs alleged that they were placed in jail pursuant to a legal process that lacked constitutional procedural protections:

> Each of the 16 plaintiffs was held in the Clark County jail after being sanctioned by Judge Jacobi or a magistrate judge presiding in his stead. The plaintiffs were brought before the [Drug Treatment Court] for a variety of missteps: failed or diluted drug tests, missed status hearings, and even self-reported drug or alcohol use. Before sanctions were imposed, Indiana law, consistent with the Due Process Clause, required that the accused person be given written notice, "obtain the disclosure of evidence against the individual," "confront and cross-examine witnesses," and be allowed counsel. Ind. Code § 33-23-16-14.5(c) . . .. It is undisputed that none of these procedural protections was actually provided in Clark County; the plaintiffs were never advised of their right to counsel, never received written notices before the hearings, and never presented evidence. Furthermore, once the plaintiffs were "sanctioned" to the county jail, the court orders generally did not give a specific term even if a term was orally mentioned at the hearing. A typical order simply provided that the plaintiffs were to be "held until further order from the Court" without any accompanying explanation or reasoning.

*Hoffman*, 894 F.3d at 840. The Seventh Circuit concluded that the plaintiffs alleged a Fourteenth Amendment due process violation because the hearing that led to their detention was "constitutionally deficient." Thus, as in *Hoffman*, and accepting the allegations here, the court assumes that Crafton was sent to jail without the required due process protections. However, also as in *Hoffman*, Crafton does not identify a defendant who could be held responsible for the violation.

Turning first to Judge Wendy Davis, as the judge presiding over the case, she is absolutely immune from damages here. "A judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction." *Polzin*, 636 F.3d at 838. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). Indiana law gives her the authority to hear violations of the conditions of deferred prosecutions. IND. CODE § 33-23-16-14.5. Therefore, she is immune from damages, even if she did not follow the proper procedures. The remedy for unconstitutional acts that she may have taken during the proceedings is an appeal to the Indiana Court of Appeals, not a federal lawsuit for damages. *See Kemper v. State*, 49 N.E.3d 196 (Ind. Ct. App. 2016) (unpublished disposition) (drug court participant appealed the sanction of spending one night in jail and writing an essay for one violation and a sanction of time served while waiting in jail for the hearing and the imposition of a curfew for another violation).

Similarly, Crafton's public defender Timothy Stucky and the unknown public defender named in the complaint cannot be sued under 42 U.S.C. § 1983. To state a federal claim under § 1983 a plaintiff must allege: "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). A criminal defense attorney, even an appointed public defender, does not act under color of state law. *Polk County v. Dodson*, 454 U.S. 312 (1981).

Next, Crafton sues Allen County, Allen County Community Corrections Residential Services, and Allen County Community Corrections. Assuming one of these entities has some involvement in these events, these entities can be held liable only pursuant to the doctrine announced in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). But such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). Crafton does not allege these procedural problems are more widespread than just his situation, and so he does not plausibly allege an official custom or policy is to blame for the procedural lapses he asserts.

As for the last two defendants—his case manager, Bailey Goodwin, and the Director of ACCCRS—Crafton alleges that after he returned to ACCCRS following the first time he was sent to the jail, he asked Goodwin for a conduct report to explain why he had been sent to jail. She allegedly refused to provide a conduct report. He then asked the Director for a conduct report to explain the jail stay, but he did not respond.

"Section 1983 imposes liability only on an official who subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. In other words, the official's act must both be the cause-in-fact of the injury and its proximate cause." *Hoffman*, 894 F.3d at 841 (quotation marks and citations omitted). By the time Crafton returned from his first jail stay, the alleged constitutional violation had already occurred; failing to get written notice after he returned from the jail is unrelated to whether due process was satisfied before he was sent there.

As for the second detention in the jail, Crafton alleges that "Allen County Community Corrections" filed a petition of revocation on February 15, 2023. He alleges he did not receive written notice of the revocation or of any claimed violations. It appears he was detained in the jail pending the resolution of the revocation proceedings. He then alleges that around March 1, 2023, he was transported to ACCCRS and given the opportunity to sign a form acknowledging his violations and agreeing to be placed on Zero Tolerance. He refused to sign the form because he didn't receive notice of any claimed violations. The Director came and told him that if he didn't sign, he would be sent back to the Allen County Jail. The Director read the conduct report to Crafton but didn't allow him to read it himself, and so Crafton did not sign. He returned to the Allen County Jail, where he remained until he was released to Adult Probation after serving 44 days in jail. As discussed above, his supervision under Adult Probation was ultimately unsuccessful, the prosecution was resumed, and he was

sentenced to the Indiana Department of Correction, where he is now serving his sentence.

The Director was not responsible for Crafton's initial placement in the jail—that was done by the State court. So the question is whether the Director can be held accountable for Crafton's continued detention after the unsuccessful attempt to get him to sign the acknowledgment of violations. In *Hoffman*, when the Seventh Circuit considered the liability of defendants who were not involved in the initial jailing but allegedly were responsible for prolonging the detention by failing to secure placements for the plaintiffs in treatment centers, it considered whether those defendants acted with "reckless disregard for their impact on plaintiff's constitutional rights." *Hoffman*, 894 F.3d at 841. There, the Seventh Circuit determined that the plaintiff had not shown those defendants' attempts to secure placements were unreasonable or too infrequent to show reckless disregard. Here, the court cannot reasonably infer that the Director's conduct when asking Crafton to sign the Zero Tolerance form was done with reckless disregard for its effect on Crafton's continued detention.

This complaint does not state a claim for which relief can be granted, and it seems unlikely that Crafton will be able to state a claim. Nevertheless, justice requires that Crafton be permitted to file an amended complaint if, after reviewing the court's order, he believes he can state a claim based on (and consistent with) the events described in this complaint. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an

8

amended complaint, Crafton needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Demetrius Crafton until **August 29, 2024**, to file an amended complaint; and

(2) CAUTIONS Demetrius Crafton if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 25, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT