UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEMETRIUS CRAFTON,<br><br>Plaintiff,<br><br>v.<br><br>WENDY DAVIS, BAILEY GOODWIN, TIMOTHY STUCKY, ALLEN, THE COUNTY OF, ALLEN COUNTY COMMUNITY CORRECTIONS RESIDENTIAL SERVICES, ALLEN COUNTY COMMUNITY CORRECTIONS, STANLEY CAMPBELL, EDWARD STITES, CODY FRY, MALLORY KUTER, KYLE KEUNEKE, TED GALLMEYER, KIMBERLY CHURCHWARD, BINIAK, THOMPSON, ALLEN, TROY HERSHBERGER,<br><br>Defendants. | CAUSE NO. 1:24-CV-155-JD-JEM |

OPINION AND ORDER

Demetrius Crafton was a prisoner when he filed this case, but he has since been released.[1] He continues to represent himself and has filed an amended complaint after the court determined that his initial complaint did not state a claim for relief. ECF 11, 20. Under 28 U.S.C. § 1915A, the court must review the merits of that amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon

---

[1] Following his release from custody, Crafton was instructed that he needed to resolve his filing fee status by either paying the remainder he owed on the filing fee or by filing a motion to proceed in forma pauperis. He paid the filing fee in full. ECF 28. Therefore, his motions for leave to proceed in forma pauperis will be denied as moot. ECF 24, ECF 26.

which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Crafton's complaint concerns the period of time in which he was participating in a deferred prosecution in Allen County. His amended complaint repeats allegations about being jail without due process and the performance of his public defenders, but it adds more detail about what happened, includes new claims about the conditions of confinement at the residential facility where he was placed and about alleged retaliation by facility staff, and names nine additional defendants. Notably, Crafton includes transcripts from the hearings before the State court, which provide even more context for his claims.[2] The amended complaint raises four general issues: (1) allegations that Crafton was deprived of liberty without due process; (2) conditions of confinement at the county residential facility where he was placed for part of the time; (3) retaliation for filing grievances; and (4) issues with the underlying plea agreement.

---

[2] The Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). When the plaintiff references and relies on it, "the contents of that document become part of the complaint and may be considered as such when the court [determines] the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted). Therefore, the court will rely on the contents of the exhibits in this order.

**(1) Due Process**

Crafton was charged with Operating a Vehicle while Intoxicated in two cases. *See State v. Crafton*, No. 02C01-2207-F6-000802 (Allen Super. Ct. filed July 14, 2022); *State v. Crafton*, No. 02C01-2012-F6-001534 (Allen Super. Ct. filed Dec. 14, 2020), available at mycase.in.gov. He agreed to participate in a deferral program. *See* IND. CODE § 33-23-16-14(a) (allowing a court to "defer proceedings against an individual and place the individual in a problem solving court program" if certain conditions are met). As part of that program, Crafton pleaded guilty in the two cases before Allen County Judge Wendy Davis, and she took the plea agreements under advisement while Crafton participated in the deferral program. If Crafton successfully completed the requirements of the deferral program, the prosecutions would be dismissed and he would have no convictions for these cases on his record. *Id.* § 33-23-16-14(c). If, however, he was unsuccessful, the prosecution could be resumed and a criminal conviction entered. *Id.* at § 33-23-16-14(b). The deferral was ultimately unsuccessful, and Crafton was sentenced to the Indiana Department of Correction ("IDOC").

Before Crafton was sentenced to IDOC, he spent just over a year in the deferral program. He began the deferral period living in a residential facility through the Allen County Community Corrections Residential Services ("ACCCRS"). During that year, Judge Davis remanded him to the Allen County Jail on a few occasions in proceedings that Crafton alleges did not comply with due process. Federal due process protections under the Fourteenth Amendment require, at a minimum, that he receive notice and an

3

opportunity to be heard before he can be sanctioned with jail time.[3] *See Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) ("The basic rights guaranteed by constitutional due process are notice of the intended adverse government action and an opportunity to be heard in response, although more elaborate procedural rights—such as the rights to present evidence, to confront adverse witnesses, and to be represented by counsel—may apply in cases in which vital private interests are at risk."). Indiana law gives Crafton more procedural rights than those.[4] If an individual is alleged to have violated a condition of the deferral program, Indiana law specifies the procedures to be followed:

>  (1) The state must prove the violation by a preponderance of the evidence.
>  (2) The evidence must be presented in open court.
>  (3) The individual who is alleged to have committed the violation is entitled to:
>     (A) receive written notice of the alleged violation;
>     (B) obtain the disclosure of evidence against the individual;
>     (C) confront and cross-examine witnesses; and
>     (D) be represented by counsel.

IND. CODE § 33-23-16-14.5(c).

Crafton attached transcripts of the hearings to his amended complaint suggesting these procedural protections were not always followed before Crafton was sent to jail. As part of the deferral program, Crafton had weekly meetings with Judge Davis and members of the supervision team. At a meeting on November 9, 2022, Judge

---

[3] The court notes a distinction between a jail stay as a sanction for a violation and being placed in jail pending a hearing on that violation. Indiana law regarding deferred prosecutions specifies that a problem solving court may remand the individual into custody "[i]f it is alleged that an individual has violated at least one (1) condition of a problem solving court program." IND. CODE § 33-23-16-14.5(b)(1). Beng placed in jail pending a hearing on a violation would not require all those procedures to be observed, though other constitutional limits would apply.

[4] It is unnecessary to decide here whether the federal due process protections are co-extensive with the procedural protections provided by Indiana law.

Davis was made aware of an argument between Crafton and a staff member at ACCCRS. She asked Crafton why he was "being rude to my staff." ECF 20-1 at 31. The following exchange occurred:

> DEFENDANT: I don't know what you, I, I'm not sure what you are talking about.
>
> THE COURT: You're out at CCRS right now, correct?
>
> DEFENDANT: Yes.
>
> THE COURT: I'm going to remand you into custody. I'm going to give you thirty days in the Allen County Jail and I will release him back on call to the program.

*Id.* at 31-32. He then spent thirty days in jail.

The next time Crafton was sent to jail occurred on February 1, 2023, at a hearing in which his attorney was not present. Judge Davis had received reports that Crafton was rude and disrespectful to case management officers and asked him about one incident report in which a staff member said Crafton was arguing in a loud voice that the rules were unfair. ECF 20-1 at 58. She asked Crafton to explain what was going on. She did not like his explanation and remanded him to the Allen County Jail and told the prosecutor he had a week to consider whether he would file a motion to revoke the deferral and resume the prosecution.[5] *Id.* at 59-60. The docket in Crafton's criminal case reveals that in the days following this hearing, ACCCRS filed three incident reports with the court, but the contents of those reports are not available for public viewing online. *See Crafton*, No. 02C01-2207-F6-000802 (filings of Feb. 2, 2023).

---

[5] It is unclear from the filings whether to characterize this as a sanction for the report or as a detention pending a hearing on the report.

5

At the next hearing on February 8, 2023, the parties and the court came to an agreement that Crafton could no longer reside at ACCCRS because of the ongoing conflicts Crafton was having with staff, but he would be allowed to stay there for a short time while he arranged other housing. ECF 20-1 at 61-63. He was not released from jail to the ACCCRS until February 13, 2023.

On February 13, 2023, Crafton was released from the Allen County Jail only to be returned that same day. ECF 20 at ¶ 10. The judge had ordered that he be placed on zero tolerance while he was at ACCCRS, and when he first arrived at ACCCRS from the jail, he was told to sign a form, which he contends was both an acknowledgment that he was on zero tolerance (which he had no problem with) and also an admission that he had committed certain violations (which he contested). *Id.* at ¶ 10. He spoke to Kyle Keuneke, a Senior Case Manager at ACCCRS, and told him he would sign the paper only if he was given a copy of the conduct report that Keuneke relied on and could discuss it with his attorney first. Keuneke, however, told him that if he didn't sign the paper, he would be sent back to the Allen County Jail. Crafton refused, and so he was transported back to the jail.

The court held a hearing two days later on February 15, 2023, about Crafton's refusal to sign the form. ECF 20-1 at 66-67. Crafton stated that he wanted to know what specific rule he broke. The court remanded him back to jail for three weeks. *Id.* at 71-72.

In those three weeks, Crafton was able to obtain independent housing and so at the next hearing on March 8, 2023, he was released from the Allen County Jail and his supervision was transferred from ACCCRS to Adult Probation. ECF 20-1 at 74. He

6

remained in the deferral program for the next nine months, until his probation supervisor filed a petition to revoke and to resume prosecution. *See Crafton*, No. 02C01-2207-F6-000802 (filing of Dec. 7, 2023). At a contested hearing (which Crafton does not challenge), the court found by a preponderance of the evidence that Crafton violated the terms of the Restoration Court, his participation in the deferred prosecution program was terminated, his guilty plea was accepted, and he was sentenced to a term in the IDOC. *Id.* (order of Mar. 8, 2023, and Apr. 19, 2024).

These allegations seem similar to those in *Hoffman v. Knoebel*, 894 F.3d 836 (7th Cir. 2018), a case concerning a problem solving court in Clark County, Indiana. In *Hoffman*, the Seventh Circuit acknowledged that the Drug Treatment Court ("DTC") arbitrarily and without due process imposed jail stays on the plaintiffs as sanctions for noncompliance with program conditions. *Id.* at 838, 841. Despite that clear due process violation, none of the defendants could be held liable. The individual defendants—a DTC case manager and the DTC director—were not directly involved in the failure to provide due process protections, but the plaintiffs attempted to hold them liable on a theory that they were deliberately indifferent for failing to intervene while the plaintiffs were unlawfully in jail. *Id.* at 839, 841. Specifically, the DTC caseworker was accused of failing to secure placements for the plaintiffs in treatment centers, extending the plaintiff's unlawful detentions. *Id.* at 841. But because the DTC caseworker made various attempts to find placements throughout their detention, the Seventh Circuit concluded he was not deliberately indifferent to the plaintiffs' rights. *Id.*

The *Hoffman* plaintiffs also argued the DTC Director was liable for not filing petitions to terminate them from the DTC program, which would notify the prosecutor that charges should be reinstated and they would not have remained indefinitely in the jail awaiting action in the deferred prosecution proceeding. *Hoffman*, 894 F.3d at 842. However, the record showed that although the Director did not file such a petition, court records showed those petitions were filed by someone else, causing the DTC judges and staff to not take further action, waiting for the prosecutors to act. Thus, unlike here, some plaintiffs were waiting in jail indefinitely for the prosecutors to reinstate charges. *Id.* The Seventh Circuit concluded that there was no evidence that any defendants' role in this "bureaucratic slip" was so egregious that it violated due process. *Id.* Any error on the part of the Director was negligence, not deliberate indifference.

Finally, the Seventh Circuit held that because neither the caseworker nor the Director had the authority to compel the judge who ordered the unlawful detentions to do otherwise, they could not be held liable for due process violations. *Hoffman*, 894 F.3d at 842.

With that background, the court will examine whether any of the defendants Crafton names could be liable for a potential due process violation. First, Judge Davis has absolute immunity for her orders to remand Crafton to jail. "A judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or

8

was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). Indiana law gives Judge Davis the authority to hear violations of the conditions of deferred prosecutions. IND. CODE § 33-23-16-14.5. Therefore, she is immune from damages, even if Crafton could show she did not follow the proper procedures. "If a judge errs through inadvertence or otherwise, a party's remedy is through appellate process." *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005) (quotation marks omitted).

Crafton also sues several staff members at the ACCCRS. To hold one of them liable for his allegedly unlawful detention, he must identify an action that "[was] taken with at least reckless disregard for [its] impact on plaintiffs' constitutional rights." *Hoffman*, 894 F.3d at 841. Crafton identifies two actions by ACCCRS Staff Member Ted Gallmeyer. First, Gallmeyer submitted the initial eligibility report upon Crafton's admittance to the deferral program, which determined that Crafton was eligible to participate in the Restoration Court. Gallmeyer also filed a report with the court after Crafton refused to sign the zero-tolerance agreement, stating that Crafton was no longer eligible for supervision with ACCC. ECF 20 at ¶¶ 2, 13; ECF 20-1 at 1, 11. Neither of these acts are plausibly related to Crafton's detention in the jail.

Crafton sues his case manager, Bailey Goodwin, alleging that after he returned from his first jail stay, he asked her for a copy of the conduct report that caused him to be detained, but she didn't give it to him. ECF 20 at ¶ 6. He alleges that he then sent request forms to Residential Coordinator Edward Sites, and Senior Case Managers

Mallory Kuter and Kyle Keuneke, asking for a conduct report to explain why he was sent to jail. *Id.* None of them responded. These defendants' failure to provide Crafton with the conduct report *after* he left the jail does not affect whether he received adequate due process *before* he was remanded to jail and does not provide a reason to allow a claim to proceed against them.

Crafton next alleges that after he initially refused to sign the zero-tolerance form, he spoke to Senior Case Manager Kyle Keuneke about his reasons for not signing the form.[6] As detailed above, Keuneke allegedly sent Crafton back to the Allen County Jail when Crafton wouldn't sign the zero-tolerance form. Keuneke's decision to return Crafton to the Allen County Jail does not provide a basis for liability because he had reason to believe that Crafton was not complying with judicially mandated requirements for his release, namely that Crafton sign the zero-tolerance form. Keuneke may have been mistaken about that requirement, but there are no allegations that allow a reasonable inference that Keuneke was more than negligent in his mistaken belief, which does not support a constitutional violation. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018).

Crafton sues prosecuting attorney Michael McAlexander for acquiescing in the jail stays without due process. But just as with the supervisory defendants in *Hoffman*, the prosecutor does not hold supervisory power over the judge and cannot be held

---

[6] Crafton alleges in the complaint that he asked to speak to Keuneke or ACCCRS Residential Manager Cody Fry, and Keuneke was the one who responded. Because Cody Fry is not mentioned elsewhere in the complaint, there is no basis to allow Crafton to proceed against him. Similarly, he names as a defendant ACCCRS Director Kimberly Churchward, but he never mentions her in the body of the complaint, so no claim can proceed against her either.

liable for her actions. 894 F.3d at 843. Moreover, the prosecutor would have prosecutorial immunity for actions taken on behalf of the State in court proceedings. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976).

Crafton also sues Allen County Sheriff Troy Hershberger, but there are no allegations that he was personally involved in Crafton's detention. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (liability under 42 U.S.C. § 1983 is based on personal responsibility). He cannot be held liable based on the actions of his staff. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). And anyway, there are no allegations that Crafton was being held longer than the terms of Judge Davis' orders. "[P]olice officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986). The Seventh Circuit is careful to guard against allowing a § 1983 suit to serve as a collateral attack on a judge's order and to "avoid[ ] the untenable result of requiring sheriffs and other court officers who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them." *Richman v. Sheahan*, 270 F.3d 430, 437 (7th Cir. 2001) (quotation marks omitted). What is relevant for purposes of jail staff is what Judge Davis' order said regarding Crafton's detention; there are no allegations that he was held longer than any of her specific orders stated.

In sum, Crafton has not identified any defendant who can be sued for his allegedly unlawful and sporadic detentions in the Allen County Jail.

11

### (2) Conditions of Confinement

Crafton complains that conditions he faced while he was placed at the ACCCRS violated his constitutional rights. Specifically, he complains that there was mold in the bathrooms, which was made worse by a broken ventilation system in the showers. ECF 20 at ¶ 3. He alleges he suffered from a sinus infection and an ear infection, and after he went to a doctor for those infections, he learned that he was abnormally allergic to mold. *Id.* at ¶ 7.

Crafton says he gave his caseworker, Bailey Goodwin, a letter from his allergy specialist saying that he was allergic to mold and that if there was mold in the facility it could be detrimental to his health, but she took no action to solve the problem. ECF 20 at ¶ 7; ECF 20-1 at 12. He also submitted several grievances complaining about the mold problem, *see* ECF 20-1 at 2-4, but he says the mold problem continued. He also sues prosecuting attorney Michael McAlexander and Judge Wendy Davis for this because both of them are on the board of ACCCRS and therefore should be held responsible for the conditions at the facility.

Because Crafton had not yet been convicted of a crime, he is protected under the Fourteenth Amendment from being held in "conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Conditions may amount to punishment if as a result, inmates are denied "the minimal civilized measure of life's necessities," which include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452

12

U.S. 337, 347 (1981) and *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). A defendant may be liable for an unconstitutional condition if he "did not take reasonable available measures to abate the risk of serious harm to [plaintiff], even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman v. Madison Cnty.* 108 F.4th 561, 572 (7th Cir. 2024) (emphasis omitted). In determining reasonableness, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). Of note, "negligent conduct does not offend the Due Process Clause," and thus allegations of negligence, even gross negligence, do not state a Fourteenth Amendment claim. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018).

Crafton does not plausibly allege a Fourteenth Amendment violation based on the conditions of the bathroom. The complaint and attached exhibits show that officials at the ACCCRS responded to his complaints and took steps to remedy the issue. In response to a grievance filed in October 2022, ACCCRS staff responded, "I have had a company in this week to look at the showers. It will be handled this week." ECF 20-1 at 2. In response to a grievance filed in December 2022, he was told, "[The bathrooms] were just cleaned last month by Paul Davis.[7] There is no mold, it's soap scum." When Crafton contested in a grievance the assertion that it was soap scum, rather than mold, in the bathrooms, he was told, "I would ask that everyone stop leaving the showers run.

---

[7] This appears to refer to the property restoration company, Paul Davis, which "provides services to clean up and repair damage to residential and commercial properties due to water, fire, mold, storm or other disasters." Paul Davis: Property Restoration Experts, https://northeast-indiana.pauldavis.com/, last viewed Sept. 19, 2025.

13

This causes humidity. We just had them cleaned by Paul Davis." *Id.* at 4. Additionally, Crafton was allowed to clean the bathrooms himself. ECF 20 at ¶ 16.

These responses show that ACCCRS staff responded reasonably to the possibility of mold in the bathrooms by having them professionally cleaned. Their actions are reasonable, even if mold was not fully remediated. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (defendant can avoid liability by responding reasonably, even if the harm is not averted). These allegations do not state a claim.

### (3) Retaliation

Crafton also asserts that he was retaliated against for filing grievances at ACCCRS in violation of the First Amendment. He alleges that he filed several grievances about a mold problem at ACCCRS, violations of policies at the center, and other matters, and he lists several actions by staff members that he says were done in retaliation for those grievances. However, the specific incidents of retaliation by three of the individual staff members he sues—Officer Biniak, Officer Thompson, and Officer Allen—are unrelated to the central claims of his complaint concerning whether he was detained without due process or whether the conditions of confinement at the ACCCRS were unconstitutional.

Claims are related in a legal sense either if the same defendant is involved in each claim <u>or</u> if the claims all stem from the same transaction or occurrence and there is a common question of law or fact. FED. R. CIV. P. 18(a), 20(a)(2). These defendants are not mentioned in any other claim, and so the court first looks to whether the actions of these defendants are part of the same transaction or occurrence as either the alleged due

14

process violations or the mold in the bathrooms. "[A]ll logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Barner v. City of Harvey*, No. 95 C 3316, 2003 WL 1720027, at *3 (N.D. Ill. Mar. 31, 2003) (quotation marks omitted). When making this determination, "courts generally take a case-by-case approach, considering such factors as the time period in which the events occurred, the people involved, the conduct alleged, and the pertinent geographical locations." *Sims v. Schultz*, No. 03 C 381, 2006 WL 8459640, at *5 (N.D. Ill. Nov. 14, 2006). Here, Crafton alleges that in retaliation for the grievances he filed, Officer Biniak wrongfully refused to allow him to retrieve a confiscated cell phone; Officer Thompson made him strip to his underwear every time he entered the facility and changed the facility rules about cutting hair to target him; and Officer Allen kept him from properly receiving his medication on two occasions. These alleged retaliatory acts are not related to the alleged due process violation, the presence of mold in the bathroom, or even to each other The only potential relationship between these claims and the rest of this case is that some of the grievances Crafton filed were about the mold in the bathroom. It is not even clear if those grievances in particular were the ones that caused the alleged retaliation. That is too tenuous of a connection to allow claims to be joined against defendants who otherwise have no involvement in the rest of the claims alleged in the complaint. *Compare Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018) (claims against doctor and parole officer related because complaint described "series of events stemming from one issue: her inability to get hormone therapy while she remained in state custody), *with UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th

15

Cir. 2018) (affirming that claims brought by seven plaintiffs against twenty-eight defendants about several years of conduct were not properly joined just because "UWM officials allegedly committed bad acts against students").

"The judge may deny joinder under Rule 20 if 'the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay.'" *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (quoting 7 Wright & Miller, Federal Practice and Procedure § 1652 (3d ed.)). Allowing these claims to remain in this lawsuit will confuse the central issues about due process and conditions of confinement and will cause delay in getting those to a final decision. Officer Biniak, Officer Thompson, and Officer Allen will be dismissed as improperly joined.

Crafton also alleges his caseworker, Baily Goodwin, retaliated against him. Because she was named in connection with the previous claims, the court will analyze whether Crafton states a retaliation claim against her. To assert a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted); *see also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Crafton alleges Goodwin harassed him by restricting his video visits due to nonpayment. He alleges this is harassment because the only reason he could not make the payment was because he lost his job when he was wrongfully jailed. This does not state a claim for retaliation. According to Crafton's own allegations, Goodwin's motivation for restricting his video visits was because of nonpayment, rather than any sort of First Amendment activity he had engaged in. *See, e.g., Kaufman v. Karlen*, 270 F. App'x 442, 446 (7th Cir. 2008) (finding no First Amendment retaliation where the defendant punished the plaintiff "because he twice tried to circumvent its policy regarding legal loans, not because he engaged in protected activities").

Finally, Crafton alleges that Judge Wendy Davis also retaliated against him for filing grievances. He alleges that she threatened to send him to IDOC if he continued to file grievances. However, their interactions about the grievances he filed were during judicial proceedings about his progress in the deferred prosecution program. Judge Davis' statements are protected by judicial immunity. *See Stump*, 435 U.S. at 359; *Polzin*, 636 F.3d at 838.

### (4) Failure to Move to Withdraw Plea

Finally, Crafton again seeks to sue his two public defenders, Timothy Stucky and Stanley Campbell, for not following his instructions to withdraw his plea. As he was told before, *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), bars him from bringing a civil claim under 42 U.S.C. § 1983 that would imply the invalidity of a criminal conviction that has not been overturned. *See* ECF 11 at 3. Plus, a public defender cannot be sued under 42 U.S.C. § 1983 because that statute applies only to defendants who act under

17

color of state law and a public defender does not act under color of state law. *Polk County v. Dodson*, 454 U.S. 312 (1981). The only federal remedy available to Crafton if he believes his public defenders provided incompetent representation would be a habeas petition under 28 U.S.C. § 2254 after exhausting his state remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973).

### (5) Institutional Defendants

Crafton names as defendants Allen County, Allen County Community Corrections, and Allen County Community Corrections Residential Services but he doesn't explain why he is suing them. To the extent these organizations are suable entities, they can be held liable under § 1983 based only on the doctrine announced in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), which requires Crafton to show that he was deprived of a federal right by an official jail policy, custom, or practice attributable to the organization. Such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). This requires more than individual employees doing things that violate Crafton's constitutional rights. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (noting importance of "distinguish[ing] between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices"). Here, there are no allegations of widespread constitutional violations in the deferral program.

This amended complaint does not state any claims for which relief can be granted. Crafton was given an opportunity to amend his claims, but federal courts cannot provide him the relief he wants based on the facts in the amended complaint.

For these reasons, the court:

(1) DENIES as moot the motions to proceed in forma pauperis (ECF 24, ECF 26);

(2) DISMISSES WITHOUT PREJUDICE Officer Biniak, Officer Thompson, and Officer Allen under Fed. R. Civ. P. 21 for improper joinder; and

(3) DISMISSES this case under 28 U.S.C. § 1915A for failure to state a claim.

SO ORDERED on September 22, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT